J-A16025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  C.M.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 278 EDA 2022 |

Appeal from the Decree Entered January 3, 2022
In the Court of Common Pleas of Wayne County Civil Division  at No(s):
CP-64-DP-0000039-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  C.M.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 279 EDA 2022 |

Appeal from the Decree Entered December 23, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
21-AD-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  C.M.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 280 EDA 2022 |

Appeal from the Decree Entered January 3, 2022
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-DP-0000038-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A16025-22

APPEAL OF: C.M.W., FATHER

: No. 281 EDA 2022

Appeal from the Decree Entered December 22, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
22-AD-2021

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 25, 2022**

In these consolidated cases, C.M.W. ("Father"), appeals from the decree and order terminating his parental rights to M.W. and A.W. ("Children") and changing the Children's goal to adoption. He claims that the evidence was insufficient to support the termination of his parental rights and challenges the altering of the Children's permanency goal from reunification to adoption. We affirm.

Children were born to Father and K.E. ("Mother") in February 2019. After Mother tested positive for various drugs in August 2020, Wayne County Children and Youth Services ("CYS") implemented an in-home safety plan involving maternal grandmother. However, that plan was soon discontinued when maternal grandmother tested positive for drugs as well. Mother and Father voluntarily placed Children in foster care and the following month, on September 11, 2020, the trial court adjudicated the Children dependent. CYS

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

initiated the Children's permanency plan ("the Plan") three days later. In April 2021, the Children were placed with paternal aunt and uncle, who have been identified as potential adoptive parents ("Adoptive Parents").[1] CYS reports that the Children currently have a positive bond with Adoptive Parents and refer to them as Mom and Dad. According to CYS, the Children are progressing well and are happy with Adoptive Parents.

Father and Mother have had difficulty finding appropriate housing as evidenced by five separate moves over the course of these proceedings. On November 15, 2021, Father and Mother moved into a one-bedroom apartment. On that same date, CYS filed petitions to terminate Father's and Mother's parental rights and a petition to change the goal from reunification to adoption. At a hearing on December 7, 2021, Mother, Father, the Children's CYS caseworker, and the Children's guardian *ad litem* testified. Ultimately, the trial court issued a decree on December 23, 2021, and a subsequent order on January 3, 2022, granting CYS's petitions to change the Children's goal to adoption and to terminate Father's and Mother's parental rights.

In its opinion supporting its decree, the trial court made the following findings of fact specifically concerning Father:

> 1. Since the inception of the case, Father was offered eighty[-]three (83) visitations. Father attended fifty[-]one (51) of the eighty[-]three (83) possible visitations, attended eighteen (18) of

---

[1] Mother and Father have an additional younger child, who has been placed in a different foster home and is not at issue in this case.

which were in-person visits, and thirty[-]three (33) were virtual visits.

2. Out of the thirty[-]two (32) missed visitations, twenty[-]three (23) Father failed to show and he did not provide a reason for the missed visits. Father provided excuses and explanations for nine (9) missed visits. For six (6) of the missed visits, Father was not feeling well and had possible COVID[-]19 exposure, two (2) work conflicts, and one (1) death in the family. Throughout the course of the proceedings, the visitation schedule remained unchanged.

3. Father's most recent virtual visit was on November 29, 2021.

4. The last time Father saw the minor [C]hildren in person was in October of 2021.

5. [CYS] is asking for the same visitation schedule for Father as it asked for Mother.

6. The bond between Father and the minor [C]hildren is similar to Mother, as the minor [C]hildren are very young, however, Father has not seen the minor [C]hildren enough to establish a bond with them.

7. On December 14, 2020, April 6, 2021, and July 6, 2021, Father's compliance with the Plan was minimal, and as of the date of the hearing on December 7, 2021, Father compliance with the Plan was none. Father has not completed any tasks or objectives on the Plan.

8. On December 14, 2020, and April 6, 2021, Father's progress was minimal, and on July 6, 2021, and as of the date of the hearing on December 7, 2021, Father [has] made no progress.

9. [CYS] attempted to arrange at-home visitations with Father, however, Father failed to comply with the Plan because he did not communicate with [CYS] to arrange the visitations. Therefore, no home visitations transpired since October of 2020.

10. Father reports that he attends "Clean Slate" for his drug addiction issues, however, "Clean Slate" will not confirm nor deny with [CYS] that Father has been attending. Father refuses drug screenings at [CYS].

11. Father has failed to attend medical appointments for the minor [C]hildren, he has not provided safe and stable housing, and he has not participated in the parenting program (and refuses

"Justice Works"). However, when visitations are arranged Father has exhibited proper parenting skills.

12. Father was last drug screened in his home by [CYS] on October 16, 2020, and Father was last screened at [CYS] on July 19, 2021 which were negative.

Tr. Ct. Op., 12/22/21, 6-7.

Following the hearing, the trial court found that CYS established by clear and convincing evidence that grounds for termination existed pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), and that termination was in the best interest of the Children under 23 Pa.C.S.A. § 2511(b). This timely appeal followed and both the court and Father complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. Whether the Trial Court erred as a matter of law in determining that there had been no progress in alleviating the circumstances which necessitated the original placement and that there had been no compliance with the permanency plan.

2. Whether the Trial Court erred as a matter of law in determining the new permanent placement goal was adoption in this matter.[2]

Father's Br. at 8.

In his first issue, Father claims that the trial court erred in determining that sufficient evidence supported the termination of his parental rights under 23 Pa.C.S.A. §§ 2511(a)(2) and (b). He argues that he did attend a significant percentage of visits with the Children and displayed appropriate parenting skills during the visits. He points out that he attended visitation with the

_____

[2] Father inadvertently listed his first issue twice in his statement of questions, but properly lists and argues his second issue in the argument section of his brief. We will therefore address it.

Children a week before the termination hearing. Further, he asserts that the court did not properly consider his positive efforts in obtaining housing and attending programs like "Clean Slate." Lastly, Father also maintains that the court erroneously failed to consider the bond between himself and the Children before terminating his parental rights.

When we review an order terminating parental rights, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation omitted). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018) (citation omitted). We may reverse a trial court decision for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *See In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id*. (citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *See In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Section 2511 requires a bifurcated analysis:

- 6 -

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id*. (citations omitted).

To affirm the termination of parental rights, this Court need only agree with the trial court's decision as to any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we conclude that the trial court properly terminated Father's parental rights pursuant to subsection 2511(a)(2). Subsection 2511(a)(2) provides:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Subsection 2511(a)(2) thus requires the moving party to prove three things by clear and convincing evidence: "(1) repeated and continued

incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa.Super. 2008) (citation omitted). "The grounds for termination of parental rights under subsection 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties." *Id*. (citation omitted).

Moreover, this Court has emphasized:

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* at 759 (citation omitted)..

If the trial court has concluded that a parent's parental rights should be terminated under Section 2511(a), then the court must determine whether, considering the child's developmental, physical, and emotional needs and welfare, termination is in the best interests of the child. 23 Pa.C.S.A. § 2511(b); *In re Adoption of S.P.*, 47 A.3d at 830. In conducting this analysis, the court should examine the emotional bond between parent and child, with

close attention to the effect on the child of permanently severing any such bond.

In this case, the court properly concluded that CYS established, by clear and convincing evidence, that Father's conduct caused the Children to be without proper parental care and that Father could not or would not remedy the conduct which led to the Children's placement. *See* Tr. Ct. Op., 12/22/21, at 10-13; Tr. Ct. Pa.R.A.P. 1925(a) Op., 1/21/22, at 12-13. According to the court, both Father and Mother were offered numerous opportunities to visit with the Children, many of which they declined. *Id*. Further, both parents made little or no progress on the Plan by refusing to participate in on-line parenting classes via the Justice Works program, refusing drug testing at CYS offices, and failing to update CYS about residential moves in a timely fashion. *Id*. Further, both Father and Mother declined to attend any of the Children's doctor appointments. *Id*.

On this basis, the court concluded that "[t]he Parents' [made] minimal to no progress in the Plan, and their failure to cooperate with [CYS] indicates that they do not possess the skillset to care for and nurture the minor [C]hildren." Tr. Ct. Op., 12/22/21, at 11. We discern no abuse of discretion. *See In re Adoption of K.C.*, 199 A.3d at 473. The record supports the court's determinations. *See In re Adoption of S.P.*, 47 A.3d at 826-827. Although we recognize that both parents have made more recent efforts, such as obtaining housing, parental rights cannot be maintained by waiting for a more

suitable time to perform parental duties while others care for and bond with the subject child. *In re K.Z.S.*, 946 A.2d at 759.

Likewise, we conclude that the trial court properly found that the Children's best interests would be served by termination of Father's parental rights. The Children, who at the time of the hearing were less than three years old, had been out of the parents' care for over 15 months and were thriving with Adoptive Parents. The court noted that while the Children expressed love and affection toward Adoptive Parents, the same could not be said regarding their bond with either Father or Mother. The court stated "[t]he testimony presented a diminished bond between the Parents and the [Children] and the Parents have not expressed a sense of love or endearment towards the [Children]." Tr. Ct. Op., 12/22/21, at 12. Thus, the trial court properly considered the Children's diminished bond with Father when terminating his parental rights as required pursuant to Section 2511(b). Father's first issue warrants no relief.

Next, Father contends that the court erred by altering the Children's permanency goal from reunification to adoption. Given our disposition concerning Father's appeal from the decree and order terminating his parental rights, we conclude Father's appeal from the decree and order changing the Children's goal is moot. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa.Super. 2020) (citing *In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force for effect.")). Accordingly, Father's last issue

also must fail. We affirm the trial court's decree and order terminating Father's parental rights and changing the Children's goal from reunification to adoption.

Decree and Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *8/25/2022*